# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1277

_____

Genesis Insurance Company,

   Plaintiff - Appellee,

 v.

City of Council Bluffs; Daniel C.
Larsen; Lyle Brown,

   Defendants - Appellants,

Curtis W. McGhee, Jr.,

   Movant,

\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-

Iowa Leagues of Cities,

   Amicus on Behalf of
Appellant.

Appeals from the United States
District Court for the
Southern District of Iowa.

_____

No. 11-1741

_____

Gulf Underwriters Insurance Company;
Travelers Indemnity Company,

   Plaintiffs,

|                                                  |   |
|--------------------------------------------------|---|
|                                                  | * |
| Genesis Insurance Company,                       | * |
|                                                  | * |
| Plaintiff - Appellee,                            | * |
|                                                  | * |
| v.                                               | * |
|                                                  | * |
| City of Council Bluffs, IA; Daniel C.            | * |
| Larsen; Lyle Brown,                              | * |
|                                                  | * |
| Defendants - Appellants,                         | * |
|                                                  | * |
| Terry Harrington, Defendant in                   | * |
| member case 1:07-cv-24; Curtis W.                | * |
| McGhee, Jr., Defendant in member                 | * |
| case 1:07-cv-24,                                 | * |
|                                                  | * |
| Defendants,                                      | * |
|                                                  | * |
| ------------------------------                   | * |
|                                                  | * |
| Iowa Leagues of Cities,                          | * |
|                                                  | * |
| Amicus on Behalf of                              | * |
| Appellant.                                       | * |

_____

Submitted: January 11, 2012
Filed:  May 11, 2012

_____

Before BYE, SMITH, and COLLOTON, Circuit Judges.

_____

SMITH, Circuit Judge.

-2-

This appeal arises from an insurance coverage dispute. The City of Council Bluffs, Iowa, and its police officers, Daniel Larsen and Lyle Brown, (collectively, "the City") sought coverage from Genesis Insurance Company ("Genesis") for § 1983 claims in the nature of malicious prosecution. Genesis filed suit against the City, seeking a declaratory judgment that its policies provided no coverage for the underlying actions. The district court[1] granted summary judgment to Genesis. The City appeals, arguing that the district court erred in ruling as a matter of law that the policies do not provide the City insurance coverage for the claims. We affirm.

## I. *Background*

Terry Harrington and Curtis McGhee filed two underlying civil actions against the City based on the City's conduct in their criminal prosecutions.

## A. *Underlying Criminal Actions*

In 1977, Harrington and McGhee were arrested for the murder of retired police officer John Schweer. "Harrington, who was seventeen at the time, was charged with Schweer's murder and was ultimately convicted [on August 4, 1978], primarily on the testimony of a juvenile accomplice, Kevin Hughes." *Harrington v. State*, 659 N.W.2d 509, 514 (Iowa 2003) (footnote omitted). According to Hughes,

> Hughes, Harrington, and . . . McGhee . . . went to [a car] dealership with the intent to steal a beige Toronado. Hughes waited in Harrington's car while Harrington and McGhee walked around a building to find the desired automobile. Harrington had a shotgun. Shortly after Harrington and McGhee left, Hughes heard a gun shot. Then Harrington and McGhee came running back. Harrington said he had just shot a cop.

*Id*.

---

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

Like Harrington, McGhee was convicted of Schweer's murder on May 11, 1978, and sentenced on June 13, 1978. Both Harrington and McGhee received life sentences.

Following his conviction, Harrington's direct appeal failed, "as did a subsequent postconviction relief action in which he claimed that Hughes'[s] testimony was perjured." *Id*. at 515. "Harrington also unsuccessfully sought habeas corpus relief in federal court." *Id*.

In 2000, Harrington filed his second state postconviction relief action. *Id*. Harrington requested that his conviction be vacated "based on an alleged due process violation arising from the prosecution's failure to turn over eight police reports to the defense during the criminal trial." *Id*. at 516. "He . . . asserted a *Brady* violation occurred in 1978 because these reports contained potentially exculpatory evidence of an alternative suspect and they had been withheld by the prosecution." *Id*. at 518. The Iowa Supreme Court held "that Harrington's due process right to a fair trial was violated by the State's failure to produce the police reports documenting their investigation of an alternative suspect in Schweer's murder." *Id*. at 525. Therefore, the court ordered that the state trial court vacate Harrington's conviction and grant him a new trial. *Id*.

On April 17, 2003, Harrington was released from prison. On September 2, 2003, McGhee was released from prison after entering an *Alford* plea.[2]

## B. *Underlying Civil Actions*

In 2005, Harrington and McGhee filed suit against, *inter alia*, the City of Council Bluffs and Officers Daniel Larsen and Lyle Brown of the City of Council Bluffs Police Department. Both Harrington and McGhee brought claims under 42

---

[2]*North Carolina v. Alford*, 400 U.S. 25 (1970).

U.S.C. §§ 1983 and 1985(3). According to the district court, Harrington's and McGhee's "§ 1983 claims seeking damages for constitutional injuries resulting from their arrests, convictions, and incarcerations are in the nature of malicious prosecution because [they] essentially allege that their constitutional rights were violated as a result of the wrongful institution of legal process against them." *Gulf Underwriters Ins. Co. v. City of Council Bluffs*, 755 F. Supp. 2d 988, 992 (S.D. Iowa 2010) (quotation and citation omitted).[3]

## C. *Declaratory Judgment Action*

The City provided Genesis notice of the underlying civil actions. Thereafter, Genesis filed suit against the City seeking, *inter alia*, a declaratory judgment that its policies did not provide coverage for the underlying civil actions. Genesis alleged that it owed no duty to indemnify the City in the underlying civil actions because the claims that Harrington and McGhee asserted related to bodily injury or personal injury that occurred prior to the Genesis policies.

"Genesis [had] issued two separate, consecutive indemnity insurance policies to the City. The first policy was effective from January 1, 2002[,] to January 1, 2003[,] and the second was effective from January 1, 2003[,] to January 1, 2004 . . . ." *Id*. at 992 (internal citation omitted). The City "concede[s] that Genesis has no duty to defend." *Id*. at 1003. But the policies "do clearly implicate a duty to indemnify for covered losses." *Id*.

"SECTION I" of the policies, entitled "COVERAGE," provides, in relevant part:

---

[3]Neither party challenges the district court's characterization of Harrington's and McGhee's claims in this appeal.

A.    Insuring Agreement

1.    Subject to the applicable Limit(s) of Insurance of this Coverage Part, we agree to indemnify the Insured for the ultimate net loss in excess of the retained limit for which the Insured becomes legally obligated to pay because of bodily injury,[4] *personal injury*, advertising injury, or property damage *which occurs during this policy period* and to which this insurance applies. . . .

2.    This insurance applies to bodily injury, *personal injury*, advertising injury, or property damage which occurs during this policy period, provided that prior to this policy period, no Insured . . . knew that the bodily injury, personal injury, advertising injury, or property damage had occurred, in whole or part. If such listed Insured . . . knew, prior to this policy period, that the bodily injury, personal injury, advertising injury, or property damage occurred, then any continuation, change or resumption of such bodily injury,

---

[4]"For 'bodily injuries,' an 'occurrence' is an 'accident.'" *Id*. at 1004. Because the policies fail to define "accident," the district court gave the term its ordinary meaning and defined it, in accordance with Iowa law, as "'an unexpected and unintended event.'" *Id*. (quoting *Weber v. IMT Ins. Co.*, 462 N.W.2d 283, 287 (Iowa 1990)). The district court concluded that because Harrington and McGhee "have not alleged any injuries arising from any unexpected or unintended events, or from anything that could reasonably be described as 'accidents'. . . . the Genesis Policies do not provide coverage for any 'bodily injuries' alleged by [Harrington and McGhee]." *Id*. "The Genesis Policies define 'bodily injury' as 'bodily injury, sickness, disease, shock, fright, mental injury or anguish, emotional distress or disability sustained by a natural person, including death resulting from any of these at any time.'" *Id*. (citation omitted). As a result, the district court concluded that "the Genesis Policies do not cover [Harrington's and McGhee's] claims for mental injury, mental anguish, emotional distress or any other 'bodily injuries.'" *Id*. On appeal, the City has not challenged the district court's conclusion with regard to "bodily injuries."

personal injury, advertising injury, or property damage during or after this policy period will be deemed to have been known prior to this policy period and will not be covered hereunder.

3. Bodily injury, *personal injury*, advertising injury, or property damage *which occurs during this policy period* and was not, prior to this policy period, known to have occurred by an Insured . . . includes any continuation, change or resumption of that bodily injury, personal injury, advertising injury, or property damage after the end of this policy period.

\* \* \*

In any event, the bodily injury, personal injury, advertising injury, or property damage must be caused by an occurrence and the occurrence must take place in the coverage territory.

(Emphases added.)

The policies define "personal injury" as

injury, other than bodily injury, arising out of one or more of the following offenses from the conduct of your operations:

1. False arrest, detention or imprisonment;

2. *Malicious prosecution*;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor[;]

4. Electronic or other publication, transmission, dissemination or storage of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

5. Electronic or other publication, transmission or dissemination or storage of material that violates a person's right of privacy.

Personal injury also includes the following offenses, but only with respect to your law enforcement activities or your departmentally approved law enforcement activities for others:

6. Assault and battery;

7. *Violation of civil rights*;

8. Violation of property rights;

9. Erroneous service of process; or

10. Failure of your law enforcement department and its employees to follow departmentally approved policy(ies) or procedure(s).

(Emphases added.)

The policies define "occurrence," "[w]ith respect to personal injury . . . , [as] an offense or series of related offenses." And, "offense" is defined as "any of the offenses included in the definitions of advertising injury or personal injury." "The Gulf Policies do not define 'false arrest, detention or imprisonment' or 'malicious prosecution.'" *Id*. at 1004.

Genesis moved for summary judgment on its declaratory-judgment claim. The district court granted Genesis's motion, concluding that the City "failed to demonstrate that there is any genuine issue of material fact as to whether a covered

injury occurred during the Genesis policy periods." *Id*. at 1009. In its analysis, the court addressed whether Harrington and McGhee alleged personal injuries and found that "the only 'offenses' potentially relevant to [Harrington's and McGhee's] remaining claims are 'malicious prosecution' and 'violation of civil rights.'" *Id*. at 1005 (footnote omitted). As a result, the district court concluded that "to meet [its] initial burden, [the City] must prove that at least one of the Claimants [(Harrington or McGhee)] is seeking damages for an injury . . . 'arising out of' malicious prosecution or a civil rights violation, that 'occur[red] during [the] policy period.'" *Id*. (citation omitted) (fifth and sixth alterations in original).

The district court then concluded that "the 'personal injuries alleged by [Harrington and McGhee] became apparent no later than 1978, the year in which [Harrington and McGhee] were convicted of murder and given life sentences. Therefore, these injuries should be deemed to have occurred, for insurance purposes, no later than 1978." *Id*. at 1007 (footnote omitted). As a result, the court held that Harrington's and McGhee's "claimed injuries did not occur, for insurance purposes, during the Genesis policy periods." *Id*.

II. *Discussion*

On appeal, the City argues that Harrington and McGhee alleged violations of their civil rights in the nature of malicious prosecution. Harrington and McGhee thus "alleged a personal injury for which coverage is afforded by the polic[ies]." The City also asserts that Harrington and McGhee "alleged that they suffered injury resulting from the conduct of the City during the terms of both policy periods. Coverage under both policies is therefore triggered." According to the City, the district court erroneously "wrote time limitations into the polic[ies] that simply don't exist by effectively requiring that injury *first* occur during the term of the insurance polic[ies] in order to obtain coverage and then compounded the error by determining that the personal injur[ies] first occurred in 1978." The City contends that the policies at issue contain no time limitation and actually "contemplate circumstances in which the

injury precedes the effective date of the policies and mandate coverage under defined terms." The City asserts that the district court "failed to follow basic principles of Iowa law governing the determination of coverage when the policies are ambiguous in language or application."

"The parties agree that Iowa law governs this diversity action. Under Iowa law, a court must construe insurance policies to give effect to the intent of the parties." *R & J Enterprizes v. Gen. Cas. Co. of Wis.*, 627 F.3d 723, 726 (8th Cir. 2010).

> The rules of construction of insurance policies [under Iowa law] are well established. The insurance policy is a contract which must be construed as a whole. The words used must be given their ordinary, not technical, meaning to achieve a practical and fair interpretation. *Youngwirth v. State Farm Mutual Auto. Ins. Co.*, 258 Iowa 974, 140 N.W.2d 881, 883.

> If the words are fairly susceptible to two interpretations the one which will sustain the insured's claim will be accepted. Thus the policy will be strictly construed against the insurer. *State Auto. & Cas. Underwriters v. Hartford Acc. & Ind. Co.* (Iowa, 1969), 166 N.W.2d 761. This rule is amplified by the statement that the court should ascertain what an insured as a reasonable person would understand the policy to mean, not what the insurer actually intended. *Goodsell v. State Auto & Cas. Underwriters*, 261 Iowa 135, 153 N.W.2d 458.

> Stated otherwise, the climate under which an insurance policy is examined favors imposition of coverage largely because the carrier drew the contract and has the expertise in the field. However, if after construing both the policy in question, the pleadings of the injured party and any other admissible and relevant facts in the record, it appears the claim made is not covered by the indemnity insurance contract issued, the insurer has no duty to defend or indemnify. *Hagen Supply Corp. v. Iowa National Mutual Ins. Co.* (8 Cir. 1964), 331 F.2d 199, 203, 204 and authorities cited therein. If such be the case, the words and phrases

of the policy should not be strained to impose liability that was not intended and not purchased.

*Cent. Bearings Co. v. Wolverine Ins. Co.*, 179 N.W.2d 443, 445 (Iowa 1970). "Insurance disputes are particularly well suited for summary judgment because the proper construction of an insurance contract is always an issue of law for the court." *Modern Equip. Co. v. Cont'l W. Ins. Co.*, 355 F.3d 1125, 1128 (8th Cir. 2004) (citing *Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Federated Mut. Ins. Co.*, 596 N.W.2d 546, 550 (Iowa 1999)).

The City "has the initial burden of proving that [Harrington's and McGhee's] disputed claims are comprehended by the policy's general coverage provisions." *Id*. (quotation and citation omitted). "Once this burden is met, [Genesis] must in turn prove the applicability of any exclusion which allegedly precludes coverage." *Id*. (quotation and citation omitted). Thereafter, the "burden . . . shifts back to [the City] to prove, if applicable, any exception to the exclusion." *Id*.

The City "concede[s] that Genesis has no duty to defend." *Gulf Underwriters Ins. Co.*, 755 F. Supp. 2d at 1003. Therefore, the only issue is whether Genesis has a duty to indemnify the City for any judgment that Harrington or McGhee may obtain against it.

The Genesis Policies are applicable "to . . . personal injury . . . which occurs during this policy period." (Emphasis added.) The "personal injury . . . must be caused by an occurrence and the occurrence must take place in the coverage territory." An "occurrence" is an "offense or series of related offenses." "Personal injury" is an "injury" which "aris[es] out of," *inter alia*, the "offense[]" of "[m]alicious prosecution" or "[v]iolation of civil rights." Therefore, as the district court noted, the City must prove that Harrington or McGhee "is seeking damages for an injury . . . 'arising out of' malicious prosecution or a civil rights violation, that 'occur[red] during

-11-

[the] policy period.'" *Id*. at 1005 (citation omitted). Thus, to resolve this appeal, we must determine when the offense of malicious prosecution "occurs." As the district court recognized,

> Genesis and [the City] agree that the Genesis Policies are "occurrence policies." Genesis Br. at 8; Defs.' Br. re Genesis at 9. Occurrence policies "provide[ ] coverage for any acts or omissions that arise during the policy period, regardless of when claims are made." *Hasbrouck v. St. Paul Fire & Marine Ins. Co.*, 511 N.W.2d 364, 366 (Iowa 1993) (internal citation omitted). Under an occurrence policy, *"[t]he time of 'occurrence' is when the claimant sustains damages, not when the act or omission causing the damage takes place." Tacker v. Am. Family Mut. Ins. Co.*, 530 N.W.2d 674, 676 (Iowa 1995). Neither of the sides dispute this basic proposition, but they disagree as to what it means to "sustain[ ] damage"—i.e., when Claimants' [(Harrington's and McGhee's)] injuries "occurred," for insurance purposes.

*Id*. (emphasis added).

"[The Iowa Supreme Court] has not decided when, for insurance coverage purposes, the tort of malicious prosecution occurs." *City of Erie, Pa. v. Guar. Nat'l Ins. Co.*, 109 F.3d 156, 159 (3d Cir. 1997). "To predict how the Iowa Supreme Court would resolve the issues, *Lindsay Mfg. Co. v. Hartford Accident & Indemn. Co.*, 118 F.3d 1263, 1267–68 (8th Cir. 1997), we will consider 'relevant state precedent, analogous decisions, considered dicta, and any other reliable data.'" *HOK Sport, Inc. v. FC Des Moines, L.C.*, 495 F.3d 927, 935 (8th Cir. 2007) (quoting *Riordan v. Church of Jesus Christ of Latter-Day Saints*, 416 F.3d 825, 829 n. 2 (8th Cir. 2005)).

"Even though the [Iowa] courts have not addressed this precise question, other courts have done so. Although there is no agreement on when the tort of malicious

prosecution occurs for insurance coverage purposes, the clear majority[5] of courts have held the tort occurs when the underlying criminal charges are filed." *City of Erie, Pa.*, 109 F.3d at 160 (citing *Royal Indem. Co. v. Werner*, 979 F.2d 1299 (8th Cir. 1992) (applying Missouri law); *S. Md. Agric. Ass'n, Inc. v. Bituminous Cas. Corp.*, 539 F. Supp. 1295 (D. Md.1982) (applying Maryland law); *Ethicon, Inc. v. Aetna Cas.& Sur. Co.*, 688 F. Supp. 119 (S.D.N.Y.1988) (applying New Jersey law); *S. Freedman & Sons, Inc. v. Hartford Fire Ins. Co.*, 396 A.2d 195 (D.C. 1978); *Am. Family Mut. Ins. Co. v. McMullin*, 869 S.W.2d 862 (Mo. Ct. App. 1994); *Paterson Tallow Co. v. Royal Globe Ins. Cos.*, 444 A.2d 579 (N.J. 1982); *Muller Fuel Oil Co. v. Ins. Co. of N. Am.*, 232 A.2d 168 (N.J. Super. Ct. App. Div. 1967); *Harbor Ins. Co. v. Cent. Nat'l Ins. Co.*, 211 Cal. Rptr. 902 (Cal. Ct. App. 1985); *Zurich Ins. Co. v. Peterson*, 232 Cal. Rptr. 807 (Ca. Ct. App. 1986)); *see also Selective Ins. Co. of S.C. v. City of Paris*, 681 F. Supp. 2d 975 (C.D. Ill. 2010) (applying Illinois law); *N. River Ins. Co. v. Broward Cnty. Sheriff's Office*, 428 F. Supp. 2d 1284 (S.D. Fla. 2006) (applying Florida law); *Coregis Ins. Co. v. City of Harrisburg*, No. 1:03-CV-920, 2006 WL 860710 (M.D. Pa. Mar. 30, 2006) (unpublished) (applying Pennsylvania law); *Billings v. Commerce Ins. Co.*, 936 N.E.2d 408 (Mass. 2010); *Town of Newfane v. Gen. Star Nat'l Ins. Co.*,

---

[5]"But [the minority of] courts have held the tort of malicious prosecution occurs on the date when the plaintiff receives a favorable termination of the underlying proceeding and his claim for malicious prosecution arises." *City of Erie, Pa.*, 109 F.3d at 160 (citing *Roess v. St. Paul Fire & Marine Ins. Co.*, 383 F. Supp. 1231 (M.D. Fla.1974) (applying Florida law); *Sec. Mut. Cas. Co. v. Harbor Ins. Co.*, 382 N.E.2d 1 (Ill. Ct. App. 1978), *rev'd on other grounds*, 397 N.E.2d 839 (Ill. 1979)); *see also Nat'l Cas. Co. v. McFatridge*, 604 F.3d 335, 344–45 (7th Cir. 2010) ("[T]he [Illinois] state law malicious prosecution claim depends upon the invalidation of Steidl's underlying conviction. That offense did not occur, for insurance purposes, until June 2003, several years after the CGL policies expired in 2000." (internal citations omitted)); *Am. Safety Cas. Ins. Co. v. City of Waukegan*, 776 F. Supp. 2d 670, 711–12 (N.D. Ill. 2011) (finding *McFatridge* controlling and holding that an arrestee's federal and state law malicious prosecution claims accrued during the policy period, triggering the insurer's duty to defend, when his underlying convictions were vacated).

784 N.Y.S. 2d 787 (N.Y. App. Div. 2004); *Consulting Eng'rs, Inc. v. Ins. Co. of N. Am.*, 710 A.2d 82 (Pa. Super. Ct. 1998).

This court, albeit in a case involving Missouri law, has followed the majority of courts and accepted the insurer's argument "that the 'occurrence' causing the 'personal injury' . . . was the filing of [the fraud] suit [forming the basis of the malicious-prosecution claim] and that no coverage is provided since the occurrence arose outside the policy period." *Royal Indem.*, 979 F.2d at 1299–1300. In *Royal Indemnity*, we affirmed the district court's grant of declaratory judgment to the insurer, explaining:

> Appellant purchased his policies after he brought the fraud suit but before it was decided. The insurer argues that the "occurrence" causing the "personal injury," if any, was the filing of that suit and that no coverage is provided since the occurrence arose outside the policy period. Appellant, on the other hand, posits that the relevant occurrence was the termination of the fraud suit, since under Missouri law no "personal injury" arises until that time. Appellant relies here on the familiar rule that a malicious prosecution action could not accrue until the relevant suit terminated in his opponent's favor. *See Euge v. LeMay Bank & Trust Co.*, 386 S.W.2d 398, 399 (Mo. 1965); *Walkenhorst v. Lowell H. Liston & Co.*, 752 S.W.2d 825, 827 (Mo. App. 1988). (There was a suggestion that Arizona law might be applicable here, but, if so, there is only a false conflict of laws, since Arizona law is the same as Missouri's. *See Bradshaw v. State Farm Mut. Auto. Ins. Co.*, 157 Ariz. 411, 417, 758 P.2d 1313, 1319 (1988)).
>
> *The cases on this question were analyzed by the district court in a lucid and well-reasoned opinion.*[6] As the district judge noted, almost all of the courts that have considered the matter have accepted the insurer's argument, *even in the face of policy language that offered stronger support for appellant's position than does that contained in the*

---

[6]*Royal Indem. Co. v. Werner*, 784 F. Supp. 690 (E.D. Mo. 1992).

*policy relevant here. . . .* We note, too, that we think it improbable that the term "personal injury" is used in a technical sense to speak of a time when a cause of action has fully matured. *It is more likely intended to describe the time when harm begins to ensue, when injury occurs to the person, that is, in this case, when the relevant law suit is filed.*

*Id*. at 1299–1300 (emphases added).

In the present case, the City virtually ignores this court's holding in *Royal Indemnity*, devoting only a passing reference to it in its opening brief. In its reply brief, the City argues that *Royal Indemnity* is distinguishable from the present case because "the law of Missouri and not the law of Iowa was applied [in *Royal Indemnity*]." Second, it asserts that "*McFatridge*, *Roess*, and *American Safety Casualty* are superior precedent to *Royal Indemnity* under the facts of this case and Iowa law."

The City, however, has not identified any meaningful distinctions between the Missouri law that we applied in *Royal Indemnity* and Iowa law, nor can we find any. Both Missouri courts and Iowa courts hold that an element of a malicious prosecution claim is that the action terminate in the party's favor. *Compare Wilson v. Hayes*, 464 N.W.2d 250, 259 (Iowa 1990) ("To prevail on a claim for malicious prosecution, the plaintiff must establish each of the following six elements: (1) a previous prosecution, (2) instigation of that prosecution by the defendant, (3) *termination of that prosecution by acquittal or discharge of the plaintiff*, (4) want of probable cause, (5) malice on the part of defendant for bringing the prosecution, and (6) damage to plaintiff." (emphasis added) (quotation and citation omitted)), *with Walkenhorst v. Lowell H. Listrom & Co.*, 752 S.W.2d 825, 827 (Mo. Ct. App. 1988) ("The elements of an action for malicious prosecution are (1) the commencement of a prosecution against the present plaintiff; (2) its instigation by the present defendant; (3) *its termination in favor of the present plaintiff*; (4) the absence of probable cause for such a proceeding; (5) the presence of malice; and (6) damage to the plaintiff

-15-

therefrom." (emphasis added)). But as the district court in *Royal Indemnity* explained, "the [underlying] suit's inception injures the defendant *even though termination of the suit must take place before the defendant* [i.e, the § 1983 plaintiff] *can recover damages*." *Royal Indem.*, 784 F. Supp. at 692 (emphasis added).

*Royal Indemnity* is persuasive precedent from this circuit adhering to the majority view that "the tort of malicious prosecution occurs for insurance coverage purposes . . . when the underlying criminal charges are filed." *City of Erie, Pa.*, 109 F.3d at 160. "But of greater significance, we believe that principles of [Iowa] insurance law, which determine when a tort occurs for insurance purposes, argue strongly in favor of the majority position." *Id.* at 162. Under Iowa law, "[t]he time of 'occurrence' is when the claimant *sustains damages*, not when the act or omission causing the damage takes place." *Tacker*, 530 N.W.2d at 676 (emphasis added). "In a claim based on malicious prosecution the damage begins to flow from the very commencement of the tortious conduct—the making of the criminal complaint. The wrong and damage are practically contemporaneous." *Cont'l Ins. Cos. v. N.E. Pharm. & Chem. Co.*, 811 F.2d 1180, 1191 (8th Cir. 1987) (quotation, alteration, and citation omitted). Therefore, "the tort of malicious prosecution occurs for insurance purposes at the time the underlying charges are filed." *City of Erie, Pa.*, 109 F.3d at 163.

"At the same time, we do not find convincing the principal argument cited in support of the minority rule." *Id.* at 161. Applying this rule, "there is a confluence between the date on which the tort occurs for insurance purposes and the date on which the statute of limitation begins to run." *Id.* However, "these dates need not necessarily correspond. Reliance on the commencement of the statute of limitation is not dispositive in determining when a tort occurs for insurance purposes." *Id.* This is because "[s]tatutes of limitation and triggering dates for insurance purposes serve distinct functions and reflect different policy concerns. Statutes of limitation function to expedite litigation and discourage stale claims." *Id.* Courts tasked with

"determining when a tort occurs for insurance purposes . . . have generally sought to protect the reasonable expectations of the parties to the insurance contract." *Id.*

After reviewing *Royal Indemnity* and other "relevant state precedent, analogous decisions, [and] considered dicta," *HOK Sport, Inc.*, 495 F.3d at 935 (quotation and citation omitted), we conclude that the Iowa Supreme Court would adhere to the majority view. Applying that view to the present case, "the underlying criminal charges" against Harrington and McGhee were filed in 1977. Therefore, Harrington's and McGhee's injuries "occurred," for insurance purposes, in 1977. As a result, Harrington's and McGhee's injuries did not "occur," for insurance purposes, during the policy periods—January 1, 2002, to January 1, 2003, and January 1, 2003, to January 1, 2004.

We also reject the City's contention that "the insurance policies are ambiguous and should be construed against the insurance companies." *City of Erie*, *Pa.*, 109 F.3d at 163. "Whether an ambiguity exists is a question of law." *Id*. (quotation and citation omitted). Although the City and Genesis "disagree about the terms of their insurance policies, disagreement between the parties over the proper interpretation of a contract does not necessarily mean that a contract is ambiguous." *Id*. (quotation, alteration, and citation omitted). "A contract is ambiguous only if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Id*. (quotation and citation omitted). Here, the City and Genesis "agree the policies are occurrence-based and provide coverage for the tort of malicious prosecution." *Id*. Admittedly, "the policies do not define precisely when the tort of malicious prosecution 'occurs.'" *Id*. But "[w]here . . . a term is not defined in an insurance policy but possesses a clear legal or common meaning that may be supplied by a court, the contract is not ambiguous." *Id*. As explained *supra*, "the courts of [Iowa] have provided a clear legal definition of when a tort occurs for insurance coverage purposes. Therefore, the meaning of the policies is not susceptible of reasonable dispute or differing constructions." *Id*. at 164.

Finally, the City asserts that "there are allegations of continuing misconduct and continuing personal injury during the terms of the Genesis policies." But we reject the contention that "the tort of malicious prosecution constitutes a continuing injury." *Id.* "Under a 'multiple trigger' approach, an insurance company has a duty to defend and indemnify if it has issued a policy in effect at any time during the continuing tort." *Id.* But

> [i]n malicious prosecution cases, there is no interval between arrest and injury that would allow an insurance company to terminate coverage. The plaintiff faces incarceration, humiliation, and damage to reputation as soon as charges are filed. Perhaps for this reason, no federal or state court has adopted the multiple trigger theory in malicious prosecution cases.

*Id.* at 165.

"For the reasons expressed, we predict [that] the [Iowa] Supreme Court would hold [that] the tort of malicious prosecution occurs, for insurance purposes, on the date the underlying charges are filed." *Id.* Because Genesis did not have an insurance contract with the City in 1977, when the underlying charges were filed against Harrington and McGhee, it did not have "a duty to defend and indemnify the City . . . against [Harrington's and McGhee's] suit[s]." *Id.*

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____

-18-