BYE, Circuit Judge,
concurring in part and dissenting in part.
I agree the 1977-78 policy Columbia Casualty Company (Columbia) issued to the City of Council Bluffs provides coverage for the malicious prosecution claims brought by Curtis McGhee and Terry Harrington. I also agree the five special excess policies Columbia issued to the City between August 1977 and July 1982 do not provide coverage because the provisions in those policies are governed by our decision in Genesis Insurance Co. v. City of Council Bluffs, 677 F.3d 806 (8th Cir.2012). I disagree, however, with the majority’s conclusion that the two excess policies Chicago Insurance Company (CIC) issued to the City for the period between July 1983 and July 1985 are governed by Genesis and therefore do not provide coverage. As a result, I respectfully concur in part and dissent in part.
As the majority acknowledges, the two CIC excess policies provide coverage if the underlying Admiral policies would provide *974 coverage. The Admiral policies, in relevant part, provide personal injury liability coverage for damages “caused by an occurrence, during the policy period.” Appellants’ App. 620. Significantly, two distinct coverage-triggering events are defined as occurrences under the Admiral policies: either “injury or damage sustained during the policy term ... arising out of the personal injury as defined herein” is considered an “occurrence.” Id. at 625 (emphasis added). Personal injury is defined to include “malicious prosecution.” Id. Thus, damage sustained during the policy term and arising out of a malicious prosecution is a coverage-triggering event under the Admiral policies.
Under Genesis, we held the “injury” consisting of the malicious prosecution itself occurred, for insurance purposes, on the date the underlying charges were filed. 677 F.3d at 812. But in Genesis, the only coverage-triggering event defined as an “occurrence” was the “injury” itself. Id. at 809. In sharp contrast, the Admiral policies plainly and unambiguously include “damage sustained during the policy term” arising out of a malicious prosecution as a coverage-triggering occurrence, separate and apart from the malicious prosecution itself. By defining not only the injury as an occurrence, but also damage arising out of the injury as a separate coverage-triggering occurrence, the terms of the Admiral policies show a clear intent to provide coverage for the continuing tort of malicious prosecution.
McGhee and Harrington sustained damage arising out 'of the malicious prosecution from 1978 through 2003, the year the two men were finally released from prison. The period of time during which the two men were imprisoned included July 1983 through July 1985. Thus, McGhee and Harrington clearly sustained damage arising out of the 1978 malicious prosecution during the time the CIC excess policies were in effect. Nowhere do the CIC/Admiral policies limit coverage only to an injury occurring during the policy period, unlike the policies interpreted in Genesis. Since “damage sustained during the policy term” is expressly included as a coverage-triggering occurrence under the Admiral policies, the majority errs when it concludes the two CIC excess policies are governed by Genesis, which involved dis-positively different policy provisions.
In rejecting the City’s straightforward attempt to enforce the plain and unambiguous terms of the CIC/Admiral policies, the majority effectively removes the word “damage” from the two Admiral policies as a distinct and separate coverage-triggering “occurrence.” The majority justifies rewriting the terms of the CIC/Admiral policies by claiming the City’s argument “is essentially the same ‘multiple trigger’ approach to the tort of malicious prosecution that was rejected in Genesis.” Ante at 971. I could not disagree more.
The City’s argument is not the same argument rejected in Genesis for the plain and simple reason that the policy terms involved here are different from the policy terms interpreted in Genesis, and the difference is dispositive. Under Iowa law, “[occurrence policies provide coverage if the incident insured against occurs during the policy period.” Tacker v. Am. Family Mut. Ins. Co., 530 N.W.2d 674, 676 (Iowa 1995). The Admiral policies unambiguously insure against damage sustained during the policy term arising out of a malicious prosecution. As a court, we should not rewrite the terms of an insurance policy and replace them with some hypothetical language an insurer wishes it had used. Instead, our task should be limited to interpreting and enforcing the terms of the policy before us, as written.[5]
*975 The majority’s cryptic justification for not enforcing the plain language of the CIC/Admiral policies is because “no federal or state court has adopted the multiple trigger theory in malicious prosecution cases.” Ante at 971 (quoting Genesis, 677 F.3d at 815-16 (in turn quoting City of Erie, Pa. v. Guar. Nat’l Ins. Co., 109 F.3d 156, 165 (3d Cir.1997))). The fact that no state or federal court has adopted a multiple trigger theory when interpreting a multiple trigger policy is hardly remarkable, and not a valid reason for rewriting an insurance contract, especially when those state and federal courts have not interpreted the policy provisions we are called upon to interpret.[6] Indeed, in addition to already having the benefit of the plain and unambiguous language of the Admiral policies to support my argument, I can similarly claim that no federal or state court has ever denied coverage when interpreting the insurance provisions involved in this case.
The majority’s invalid reason for refusing to enforce the CIC/Admiral policies can only be interpreted as the adoption of a per se rule prohibiting enforcement of multiple trigger insurance coverage in malicious prosecution cases as a matter of policy — no matter what the insurance contract says — merely because it has not been done before. In a case where the terms of the insurance contract are unambiguous and evince a clear intent to cover subsequent damage arising out of a malicious prosecution, the only valid reason for refusing to enforce the contract would be on policy grounds. What is disturbing about the majority’s approach, however, is its decision to invalidate unambiguous contract language as a matter of policy without addressing the propriety of that approach under Iowa law.
The Iowa courts have never addressed a multiple trigger approach in a malicious prosecution case and therefore have never rejected the theory. Iowa law does not suggest the state would reject the theory, either, and thus shows the majority’s invalidation of the CIC/Admiral policies is unjustified.
The Iowa Supreme Court has repeatedly instructed courts to exercise caution before excising terms from an insurance contract on policy grounds. See Robinson v. Allied Prop. & Cas. Ins. Co., 816 N.W.2d 398, 408 (Iowa 2012); Thomas v. Progressive Cas. Ins. Co., 749 N.W.2d 678, 687 (Iowa 2008); *976 Grinnell Mut. Reinsurance Co. v. Jun-gling, 654 N.W.2d 530, 540 (Iowa 2002); Shelter Gen. Ins. Co. v. Lincoln, 590 N.W.2d 726, 730 (Iowa 1999); DeVetter v. Principal Mut. Life Ins. Co., 516 N.W.2d 792, 794 (Iowa 1994); Walker v. Am. Family Mut. Ins. Co., 340 N.W.2d 599, 601 (Iowa 1983); Skyline Harvestore Sys., Inc. v. Centennial Ins. Co., 331 N.W.2d 106, 109 (Iowa 1983).
Under Iowa law, “[i]t -is not the court’s function to curtail the liberty to contract by enabling parties to escape their valid contractual obligation on the ground of public policy unless the preservation of the general public welfare imperatively so demands.” Tschirgi v. Merchants Nat. Bank of Cedar Rapids, 253 Iowa 682, 113 N.W.2d 226, 231 (1962) (citing Twin City Pipe Line Co. v. Harding Glass Co., 283 U.S. 353, 51 S.Ct. 476, 75 L.Ed. 1112 (1931)). “This is a patently high standard.” Aurora Nat’l Life Assurance Co. v. Harrison, 462 F.Supp.2d 951, 971 (S.D.Iowa 2006). “[F]or a court to undertake to invalidate private contracts upon the ground of public policy is to mount a very unruly horse, and when you once get astride it you never know where it will carry you.” Skyline, 331 N.W.2d at 109 (internal quotation marks and citation omitted).
Thus, Iowa law requires an insurer to identify general public welfare interests that prohibit enforcement of an insurance policy before a court is justified in refusing to enforce the policy as written. Neither the majority nor the insurers involved in this ease have identified any general public welfare interests implicated by the enforcement of the CIC/Admiral policies, let alone implicated to the point where invalidation of the contracts is “imperatively” demanded.
For the reasons stated, I respectfully dissent from the majority’s refusal to enforce the plain and unambiguous terms of the CIC/Admiral policies, but otherwise concur in the rest of the majority’s decision.

. As the author of the majority opinion has noted, "the terms of an insurance contract *975 are not to be rewritten under the rule of strict construction against the company issuing it so as to bind the insurer to a risk which is plainly excluded and for which it was not paid.” Grisham v. Commercial Union Ins. Co., 951 F.2d 872, 875 (8th Cir.1991) (citation omitted). We refrain from rewriting the terms of a policy because to do so “would fly in the face of the principle that courts should not indulge in a forced construction outside the intent of either party.” Id. (citations and internal quotation marks omitted). The same principles apply when an insured is asking a policy to be enforced as written, to require an insurer to provide coverage for a risk plainly included within the policy's coverage terms, and consistent with the intent of both parties. The majority's opinion defies the same well-worn principles the author once touted.

. I have already explained that the policy terms in Genesis are dispositively different from the policy terms at issue here. Similarly, the policy provisions in City of Erie are not the same. There, one group of the insurance policies at issue applied "only to acts committed or alleged to have been committed during the policy period” while the other group of policies only provided coverage for " ‘bodily injury', ‘property damage' or 'personal injury’ ... occurring during the policy period as a result of a law enforcement incident.’ " 109 F.3d at 158 n. 4. The majority does not cite any cases involving a policy where damage sustained during the policy term and arising out of a malicious prosecution was a separate coverage-triggering event from the malicious prosecution itself.