# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

May 29, 2019

Lyle W. Cayce
Clerk

No. 17-60291

————

THE TRAVELERS INDEMNITY COMPANY; THE TRAVELERS INDEMNITY COMPANY OF AMERICA; UNITED STATES FIDELITY AND GUARANTY COMPANY; ST. PAUL FIRE ; MARINE INSURANCE COMPANY,

>    Plaintiffs - Appellants

v.

ETHEL MITCHELL, Executrix of the Estate of Phillip Bivens; THE ESTATE OF LARRY RUFFIN; THE ESTATE OF BOBBY RAY DIXON; LATURAS SMITH; CARRIE STRONG,

>    Defendants - Counter Plaintiffs - Counter Defendants - Appellees

v.

SCOTTSDALE INSURANCE COMPANY

>    Counter Defendant - Counter Plaintiff - Appellant

————

Appeals from the United States District Court
for the Southern District of Mississippi

————

Before HIGGINBOTHAM, SOUTHWICK and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:

Phillip Bivens, Bobby Ray Dixon, and Larry Ruffin spent a collective 83 years in prison for the rape and murder of a woman in Forrest County,

No. 17-60291

Mississippi. Their confessions were coerced and evidence against them fabricated. They were innocent.

By the time DNA evidence exonerated them, Ruffin had died in prison while Dixon and Bivens had developed diseases that killed them not long after they gained the freedom to which they were always entitled. Their estates filed a civil rights lawsuit against Forrest County.

The question in this separate case is whether two of the County's law enforcement liability policies require the insurers to defend the civil rights suit. The answer turns on whether the policies are triggered when injuries occur during the policy period, even though the wrongful acts that caused the injuries occurred before the policy period. The district court held there is a duty to defend. We agree.

## I.

The first tragedy occurred in May 1979 when Eva Gail Patterson, a 25-year-old mother of two, was raped and murdered in her home. Her two sons watched her die.[1]

The second tragedy began when officers of the Forrest County Sherriff's Department targeted Larry Ruffin for the crime. Ruffin was then an inmate at a restitution center, where he was working to compensate the victim of a minor theft. The day after the murder, Forrest County officers confronted him—one threatened to kill him—then locked him in the Forrest County jail for two days. Soon after, a Hattiesburg Police officer threatened another inmate at the restitution center with false charges unless he implicated Ruffin in the murder. Once armed with the fabricated statement, police arrested Ruffin.

---

[1] We draw our facts from the estates' operative complaint because it determines whether the insurers must defend. *Auto Ins. Co. of Hartford v. Lipscomb*, 75 So. 3d 557, 559 (Miss. 2011).

2

No. 17-60291

That evening, Forrest County and Hattiesburg officers "beat, punched, kicked, slapped, and hurled racial slurs and death threats at Larry Ruffin, demanding that he confess to the crime." It took seven hours to secure his confession.

The victim's young son had told the police that there was only one perpetrator. But in the fall of 1980, as Ruffin's trial was approaching, police arrested Bobby Ray Dixon and Phillip Bivens. Dixon, who had previously been arrested with Ruffin for theft, was mentally handicapped as a result of being kicked in the head by a horse as a child. After succumbing to beatings and threats of the death penalty, he confessed, implicating himself, Ruffin, and Bivens.

Bivens's wife was related to Ruffin's girlfriend. Bivens was a native Californian who spent less than a year in Forrest County—but that year included May 1979. After being arrested in California and flown back to Mississippi, he too was threatened with violence and death. He too confessed.

After their coerced confessions, Bivens and Dixon pleaded guilty. Ruffin was convicted at trial. All three got life sentences. In prison, they were the victims of numerous assaults by other prisoners. Each developed physical injuries and maladies, including Ruffin's infection with syphilis and herpes in 1984–85, and Bivens's contraction of Hepatitis C in 2007. They filed postconviction appeals asserting their innocence, but each was rejected.

Dixon contacted the Innocence Project in 2008, and the Project obtained DNA testing of the sperm from the victim's rape kit. It matched the DNA profile of Andrew Harris, who was then serving a life sentence for another rape committed shortly after the rape and murder for which Bivens, Dixon, and Ruffin were incarcerated.

Ruffin had been killed by an electrical shock eight years before he was exonerated. Dixon died shortly after being released on medical parole but five

weeks before he was officially cleared.  Bivens lived just three more years as a free man.

The estates sued Forrest County, the City of Hattiesburg, and several individual officers for civil rights violations, including coercing confessions, fabricating evidence, withholding exculpatory evidence, and prosecuting without probable cause.  Over the years, Forrest County had purchased a series of law enforcement liability policies from various insurers.  As relevant to this case, a Scottsdale Insurance Company policy was effective from November 1985 through November 1986, and St. Paul Fire and Marine Insurance Company policies were effective from February 2005 through February 2011.

Travelers Indemnity Company (which is responsible for the St. Paul policies) sued for a declaratory judgment that it does not owe a duty to defend Forrest County from the civil rights claims.  The estates brought counterclaims against Scottsdale in the ensuing litigation.  The district court rejected a duty to defend for a number of insurers with policies in effect during the period of incarceration.  But, on cross-motions for summary judgment, it ruled that Travelers and Scottsdale do owe duties to defend.  Those two insurers appeal.

## II.

We review the district court's grant of summary judgment de novo. *Admiral Ins. Co. v. Ford*, 607 F.3d 420, 422 (5th Cir. 2010).  The court's interpretation of an insurance policy is a question of law that we also review de novo.  *Id.*

Mississippi requires that insurance policies be interpreted "exactly as written," so long as they are "clear and unambiguous." *George v. Mississippi Farm Bureau Mut. Ins. Co.*, 168 So. 2d 530, 531 (Miss. 1964).  If the policy's terms are ambiguous or doubtful, we interpret them "most favorably to the

No. 17-60291

insured and against the insurer." *Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 382–83 (5th Cir. 1998).

Mississippi applies the so-called eight corners rule to determine whether an insurer has a duty to defend a claim against its insured. That is, the question is resolved by comparing the four corners of the policy with the four corners of the complaint. *Auto Ins. Co. of Hartford v. Lipscomb*, 75 So. 3d 557, 559 (Miss. 2011). If the complaint states a claim that is "within or arguably within the scope of coverage provided by the policy," the insurer must defend. *Am. Guarantee & Liab. Ins. Co. v. 1906 Co.*, 273 F.3d 605, 610 (5th Cir. 2001); *see also Lipscomb*, 75 So. 3d at 559 (explaining that insurers must defend claims that could "potentially" be covered).

A.

We begin with the terms of the policies. And because their language differs, we discuss each separately.

The Travelers policy provided Forrest County and its officers with law enforcement liability coverage from February 2005 through February 2011. Its relevant terms follow:

> **Law enforcement liability.** We'll pay amounts any protected person is legally required to pay as damages for covered injury or damage that:
> - results from law enforcement activities or operations by or for you;
> - happens while this agreement is in effect; and
> - is caused by a wrongful act that is committed while conducting law enforcement operations.
>
> . . .
>
> *Injury or damage* means bodily injury, personal injury, or property damage.
>
> *Bodily injury* means any harm to the health of other persons. It includes care, loss of services, or death that results from such harm.
>
> *Harm* includes any of the following:

5

- Physical harm, sickness, or disease.
- Mental anguish, distress, injury, or illness.
- Emotional distress.
- Humiliation.

*Personal Injury* means injury, other than bodily injury, caused by any of the following wrongful acts:

- False arrest, detention, or imprisonment.
- Malicious prosecution.
  . . .

Travelers does not dispute that Bivens's and Dixon's[2] injuries were caused by wrongful acts, or that some of those wrongful acts were committed by Forrest County officials engaged in law enforcement activities. The issue is whether the injuries they suffered between 2005 and 2011 triggered a duty to defend, even though the wrongful causal acts occurred decades prior.

The Travelers policy provides coverage for "injury or damage that . . . happens while this agreement is in effect." That temporal requirement applies only to the injury. The two other requirements for coverage—that the injury resulted from the insured's "law enforcement activities" and was "caused by a wrongful act that is committed while conducting law enforcement operations"—do not have a temporal limitation. Travelers thus bargained for an injury-based trigger of coverage, not an act-based trigger. Under the policy's plain terms, Travelers must defend any claim in which covered injuries occurred between 2005 and 2011, regardless of when the wrongful causal act occurred.

Travelers argues that Bivens and Dixon could not have been injured by false imprisonment 25 years after their convictions because false imprisonment ends with the inception of legal process. *See Wallace v. Kato*, 549 U.S. 384, 389 (2007) ("Reflective of the fact that false imprisonment

---

[2] Ruffin died in 2002, before the Travelers policy took effect.

consists of detention without legal process, a false imprisonment ends once the victim becomes held *pursuant to such process . . . .*" (emphasis in original)). We agree that Bivens's and Dixon's continued imprisonment, alone, did not trigger coverage. The inception of legal process predated the Travelers policy period by decades, so the policy does not cover injuries for a claim of false arrest or imprisonment. *See* W. PAGE KEETON ET AL., PROSSER AND KEETON ON TORTS (5th ed. 1984) § 120, at 888 ("If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more."). As the policy's coverage for "personal injury" requires injury related to those torts, it does not apply.

But unlike personal injury coverage, the focus of which is the list of covered causal torts, bodily injury coverage is not tethered to a list of causal events. In the Travelers policy, bodily injury includes any physical, mental, and emotional harm—it is defined by the resulting harm, not its cause. *See* RESTATEMENT OF LIABILITY INSURANCE § 33 cmt. b (Final Draft No. 2, approved 2018) (using bodily injury coverage as an example of a "[c]ommon harm-based trigger"). Whereas personal injury coverage "looks at the alleged tort" to determine if there is coverage, "'bodily injury' looks at the damage to determine if there is coverage." 20 ERIC MILLS HOLMES, HOLMES' APPLEMAN ON INSURANCE § 131.2, at 347 (2d ed. 2002). So we must look to the specific harms that Bivens and Dixon alleged. *See* 1 ALLAN D. WINDT, INSURANCE CLAIMS AND DISPUTES § 4:1, at 4-34 (5th ed. 2010) ("When coverage is not dependent upon the existence of a certain designated 'offense,'—e.g., personal injury or advertising injury—but upon the existence of a type of injury—e.g., bodily injury or property damage—regardless of the offense involved, one should focus on the factual allegations.").

The estates allege that Bivens and Dixon suffered numerous, independent harms between 2005 and 2011. Here is a sampling:

No. 17-60291

- "From 2000 through 2010, Mr. Dixon suffered other ailments which were caused by the conditions of his confinement, including staph infections, chest pains, dizziness, convulsions, blurry vision, infections, hematomas, rashes, coughing up blood, nausea, vomiting, diarrhea, bursitis, urinary tract infections, and suicidal depression."
- Dixon came up for parole in February 2006 and December 2009. When his petitions for early release were denied, Dixon suffered "mental anguish, embarrassment, humiliation, [and] emotional distress . . . ."
- "Mr. Bivens . . . suffered with sinusitis, high blood pressure and hypertension, dizziness, nausea, chest pains, abnormal heart rhythm, shoulder injuries, and bursitis from 2005 through 2010 resulting from substandard prison conditions."
- "In 2007, Mr. Bivens contracted Hepatitis C, which was not properly treated. This hepatitis in turn led to a number of medical problems, including cirrhosis of the liver in 2008 followed by liver cancer."

But for Forrest County's alleged wrongful acts—coerced confessions, fabricated evidence, and suppressed evidence[3]—Bivens and Dixon would have been free men and not suffered these physical and mental injures. Because the complaint alleges several distinct injuries occurring during the policy period, Travelers has a duty to defend under the eight-corners rule.

B.

We now turn to the Scottsdale policy, which provided Forrest County with law enforcement liability coverage from November 1985 through November 1986. Here are its relevant terms:

The Company will pay on behalf of the INSURED all sums which the INSURED shall become legally obligated to pay as damages because of WRONGFUL ACT(S) which result in:
    A) PERSONAL INJURY

---

[3] To the extent that Travelers argues that Forrest County officers' civil rights violations did not proximately cause Bivens's and Dixon's bodily injuries (because they were more proximately caused by prosecutors and prison officials), that argument goes to indemnity, not the duty to defend. The policy imposes on Travelers the duty to defend even claims that are "groundless." And Mississippi law imposes a duty to defend any claim that falls "arguably," *Am. Guarantee*, 273 F.3d at 610, or "potentially," *Lipscomb*, 75 So. 3d at 559, within the policy's coverage.

No. 17-60291

B) BODILY INJURY

C) PROPERTY DAMAGE

caused by an OCCURRENCE and arising out of the performance of the INSURED'S duties to provide law enforcement and/or other departmentally approved activities . . . .

## DEFENSE, SETTLEMENT AND SUPPLEMENTARY PAYMENTS

The Company shall have the right and duty to defend any suit against the INSURED seeking damages on account of such PERSONAL INJURY, BODILY INJURY, or PROPERTY DAMAGE even if any of the allegations of the suit are groundless, false, or fraudulent . . . .

. . .

## DEFINITIONS

. . .

PERSONAL INJURY—means:

. . .

3) False arrest, detention or imprisonment, or malicious prosecution;

. . .

if such offense is committed during the policy period.

. . .

BODILY INJURY—bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom.

. . .

OCCURRENCE—means an event, including continuous or repeated exposure to conditions, which results in PERSONAL INJURY, BODILY INJURY or PROPERTY DAMAGE sustained, during the policy period, by any person or organization and arising out of the performance of the INSURED'S law enforcement duties.

Like Travelers, Scottsdale does not dispute that Forrest County officers committed wrongful acts while executing law enforcement duties. But we must again decide whether injuries suffered in prison during the policy period trigger a duty to defend even though prepolicy acts caused those injuries.

9

No. 17-60291

Unlike Travelers', Scottsdale's policy is ambiguous on this question. It does not require that a "wrongful act" occur during the policy period. But it does require that covered injuries result from an "occurrence." The policy's definition of "occurrence" includes the phrase "during the policy period," but it is not clear whether it means that the injury must occur during the policy period, or that the occurrence must occur during the policy period.

The "nearest reasonable referent" canon helps resolve the ambiguity. "When the syntax involves something other than a parallel series of nouns or verbs, a prepositive or postpositive modifier normally applies only to the nearest reasonable referent." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 152 (2012). The relevant portion of the policy's definition of "occurrence" can be abbreviated as (1) an event, (2) that results in injury sustained, (3) during the policy period. The postpositive modifier ("during the policy period") immediately follows the "injury sustained" term. So, applying the canon, the injury must occur during the policy period; the causal event can precede it.

A basic principle of insurance law points in the same direction as the syntactic rule. When a court "deems the terms of an insurance policy ambiguous or doubtful, it must interpret them most favorably to the insured and against the insurer." *Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 382–83 (5th Cir. 1998); *see also Caldwell v. Hartford Acc. & Indem. Co.*, 160 So. 2d 209, 212–13 (Miss. 1964) ("The rule that the insurance policy prepared by the insurer must be construed more strongly against the insurance company, and that any fair doubt should be resolved in favor of the insured, is so well-settled in the law of insurance that we hesitate to cite any cases.").

Both the grammatical and insurance canons thus resolve the ambiguity by interpreting the policy as providing the same coverage as Travelers': If the

estates alleged that covered injuries occurred during the policy period, Scottsdale must defend.

And, again, the estates make the necessary allegations. The Scottsdale policy defines bodily injury to include bodily injury, sickness, and disease. The estates' complaint alleges that all three men suffered such injuries between November 1985 and November 1986:

- Dixon "suffered bodily injuries, assaults and batteries, and numerous other injuries in prison in 1985 and in subsequent years."
- Ruffin "was infected with syphilis and herpes in 1984 and 1985. From 1985 through 1988 he suffered severe rashes, abdominal pain, nausea, and vomiting resulting from his exposure to detergents and other chemicals used in the prison."
- "From 1985 through 1987, Mr. Bivens was admitted to the hospital or medical ward over a dozen times for asthma attacks, respiratory distress, and bronchitis aggravated by prison conditions."

Although Scottsdale's duty to defend was not triggered by the ongoing imprisonment, it was triggered by the discrete bodily injuries Bivens, Dixon, and Ruffin suffered as a result of the County's wrongful acts that framed them. We thus affirm the district court's judgment that Scottsdale has a duty to defend.

## III.

We have resolved this case against Travelers and Scottsdale by applying the plain terms of their policies and, in Scottsdale's case, established canons of interpretation. That is consistent with Mississippi law, which holds that an "insurance company's duty to defend its insureds derives neither from common law nor statute, but rather from the provisions of its policy, that is, its insurance contract with its insured." *Baker Donelson Bearman & Caldwell, P.C. v. Muirhead*, 920 So. 2d 440, 450 (Miss. 2006).

We thus are not applying a "theory" of insurance coverage. Travelers and Scottsdale devote substantial energy to arguing that Mississippi would not

recognize so-called "continuous trigger" or "multiple trigger" theories. We agree that such extracontractual rules have no role to play. Under a continuous trigger theory, "an insurance company has a duty to defend and indemnify if it has issued a policy in effect at any time during the continuing tort." *City of Erie, Pa. v. Guaranty Nat. Ins. Co.*, 109 F.3d 156, 164 (3d Cir. 1997). We do not hold that Forrest County's torts were continuing. That is why we do not find a duty to defend under the personal injury provision—the false imprisonment tort ended with the institution of legal process. But the estates allege bodily injuries during the policy periods that were distinct from the convictions themselves.

Closer to the mark, the insurers argue that siding with the estates would require us to apply a multiple trigger theory. We do hold that coverage was triggered in more than one year by more than one injury. But we do so because Travelers and Scottsdale agreed to policies that permit multiple triggers if there are different injuries, quite apart from any common law "multiple trigger" principle. A simple analogy may be useful. Say that one insurer promises an apple farmer to pay for any bodily injury caused in 1985, so long as it is caused by the farmer's agricultural acts. Another insurer makes the same promise for 2010. If the farmer had planted a tree in 1979, and apples from that tree fell and injured passersby in both 1985 and 2010, both policies would be triggered. The two injuries are distinct from one another despite stemming from the same covered act. And it does not matter that the injuries arose years after the covered act. Reaching that same conclusion here is just a matter of enforcing the parties' agreements, not a broader theory of insurance law.

The cases Travelers and Scottsdale cite in support of a contrary result fall into two buckets. The first and larger bucket of cases does not apply here because they address act-based policies, not injury-based ones. *See City of Erie*,

109 F.3d at 158 (parties agreed that policies covered "liability for any act done while the policy is in effect"); *Sarsfield v. Great Am. Ins. Co. of N.Y.*, 335 F. App'x 63, 66 (1st Cir. 2009) ("This insurance applies to 'wrongful act(s)' which occurs in the 'coverage territory' and during the policy period."); *TIG Ins. Co. v. City of Elkhart*, 122 F. Supp. 3d 795, 804 (N.D. Ind. 2015) ("caused by an OCCURRENCE to which this policy applies during this POLICY PERIOD"); *Indian Harbor Ins. Co. v. City of Waukegan*, 33 N.E.3d 613, 616 (Ill. Ct. App. 2015) ("The wrongful act(s) must occur during the policy period and within the policy territory."); *City of Lee's Summit v. Missouri Pub. Entity Risk Mgmt.*, 390 S.W.3d 214, 218 (Mo. Ct. App. 2012) ("caused by or arising out of . . . an act, accident, event, during the coverage period"); *Town of Newfane v. Gen. Star Nat'l Ins. Co.*, 14 A.D.3d 72, 75 (N.Y. App. Div. 2004) ("caused by an offense . . . committed . . . during the policy period"). In wrongful conviction cases, the wrongful act is the one that causes the wrongful conviction; thus, act-based policies are usually triggered on or around the time of conviction.[4] That has no bearing on injury-based policies like Travelers' and Scottsdale's.

The second bucket of cases (which also includes many from the first) addresses personal injury, not bodily injury. *See, e.g., Genesis Ins. Co. v. City of Council Bluffs*, 677 F.3d 806, 812, 815 (8th Cir. 2012) (malicious prosecution occurred when charges were filed, so personal injury arose at that time); *Chicago Ins. Co. v. City of Council Bluffs*, 713 F.3d 963, 970–71 (8th Cir. 2013) (same). We have already explained the difference between the two types of coverage: The completion of a tort triggers personal injury coverage when the

---

[4] The estates do allege that Forrest County officials committed additional wrongful acts during Travelers' and Scottsdale's policy periods by failing to come forward with exculpatory evidence or admit their civil rights violations. But other courts have rejected this argument, holding that failure to admit past unconstitutional acts does not retrigger an act-based policy. *See, e.g., Indian Harbor*, 33 N.E.3d at 623. We need not decide the question because the Travelers and Scottsdale policies are injury-based rather than act-based.

policy defines personal injury in terms of a cause of action. But the suffering of a new harm—provided it is caused by a covered act—triggers bodily injury coverage, so long as the policy defines bodily injury without reference to the tort that caused it.

We recognize that some wrongful conviction cases have applied a rule that even injury-based coverage is triggered only when the injury first manifests itself—a single, exclusive trigger. *Genesis Ins.*, 677 F.3d at 815–16; *Chicago Ins.*, 713 F.3d at 971; *see also Coregis Ins. Co. v. City of Harrisburg*, No. 1:03-CV-920, 2006 WL 860710, at *11 (M.D. Pa. Mar. 30, 2006); *N. River Ins. Co. v. Broward Cty. Sherriff's Office*, 428 F. Supp. 2d 1284, 1289–90 (S.D. Fla. 2006); *Idaho Counties Risk Mgmt. Program Underwriters v. Northland Ins. Cos.*, 205 P.3d 1220, 1226 (Idaho 2009). But those cases did not confront the allegations we have here of discrete bodily injuries beyond the harm of incarceration itself. The majority in *Chicago Insurance*, for instance, rejected the idea that because "the period of time during which the two men were imprisoned included" the policy period, they "clearly sustained damage" during the policy period. 713 F.3d at 974 (Bye, J., concurring in part and dissenting in part). And the *Coregis* court clarified that the underlying plaintiff's alleged humiliation and reputational damage did not "suggest that he has incurred injuries distinct from those he suffered as the result of his arrest, prosecution, and ultimate conviction." 2006 WL 860710, at *10, 12.

Given that the estates do allege distinct injuries,[5] not just a continuous injury beginning with incarceration and ending with exoneration and release, Mississippi law does not require us to graft onto the policy language the single-trigger rule Travelers and Scottsdale advocate. The cases they rely on say only

---

[5] Of course, for the County to obtain indemnity, the estates will need to prove that distinct bodily injuries occurred during the policy periods. But at this stage, it is enough that those injuries are alleged. *See supra* note 3.

No. 17-60291

that the statute of limitations for professional negligence, when the alleged negligence results in wrongful conviction, runs from the negligent causal act, not exoneration and release. *See Smith v. Sneed*, 638 So. 2d 1252, 1256 (Miss. 1994); *Stevens v. Lake*, 615 So. 2d 1177, 1183 (Miss. 1993). But the *Smith* and *Stevens* analysis focuses on when the "unlawful acts" occurred, so Travelers' and Scottsdale's reliance on them is unavailing. *See Smith*, 638 So. 2d at 1256 (quoting *Stevens*, 615 So. 2d at 1183). As we have discussed at length, their policies are not triggered by unlawful acts, but by resulting injuries.

At bottom, Travelers and Scottsdale ask us to hold that that insurance coverage be triggered by a single moment of wrongful conduct, or a single moment of injury—even when the policy's terms do not. If insurers want that result, they know how to bargain for it. Like the insurers in many of the cases cited by Travelers and Scottsdale, four insurers won summary judgments in this case because they wrote policies requiring that the wrongful act occur during the policy period.

Another option is the so-called "deemer clause," under which all resultant injuries are deemed to have occurred simultaneously with the act that caused them. *See* RESTATEMENT OF LIABILITY INSURANCE § 33 cmt. e (explaining that deemer clauses "define a triggering event to take place at a designated time even when that event did not only take place at that time, or perhaps not even at that time at all").[6] Tellingly, Travelers bargained for just such a clause in the policy at issue in this case, but only for property damage

---

[6] From an insurer's perspective, deemer clauses can be good or bad, depending on the likelihood that the insured will do something that could cause damage for years to come. A single triggering event (the wrongful act or the first sign of damages) during the policy period can sign the insurer up to cover damages that may last well beyond its policy period—up to its policy limits, anyway. But the insurer does not have to cover injuries for acts that occurred prior to the policy period.

15

coverage: "We'll consider all loss of use of . . . undamaged tangible property to happen at the time of the wrongful act which caused it."  It could have done the same for bodily injury coverage.  Indeed, it did so in a law enforcement liability policy issued to Forrest County for 2012–13: "All 'bodily injury' . . . caused by the same 'wrongful act' or 'related wrongful acts' will be deemed to occur when the first part of such 'bodily injury' . . . occurs."  We must give effect to the different bargain Travelers and Scottsdale struck in the earlier policies.

\* \* \*

"Insurance policies are contracts, and as such, they are to be enforced according to their provisions." *Noxubee Cty. School Dist. v. United Nat. Ins. Co.*, 883 So. 2d 1159, 1166 (Miss. 2004).  The provisions of the Travelers and Scottsdale policies cover bodily injuries occurring during the policy period.  Because the estates' complaint alleges those injuries during the relevant time periods, both insurers have a duty to defend Forrest County and its officers.  We thus AFFIRM the judgment of the district court.