[Cite as *OTARMA v. Miami Twp.*, 2023-Ohio-733.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

|  |  |  |
|---|---|---|
| OTARMA, et al. | : | |
| Appellees | : | C.A. No. 29570 |
| v. | : | Trial Court Case No. 2017 CV 04749 |
| MIAMI TOWNSHIP, OHIO, et al. | : | (Civil Appeal from Common Pleas Court) |
| Appellants | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on March 10, 2023

. . . . . . . . . . .

ROBERT J. GEHRING, BRIAN R. REDDEN, SABA ALAM, and EDDIE MCHALE, Attorneys for Appellees

TERENCE L. FAGUE and ZACHARY B. WHITE, Attorneys for Appellant

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Miami Township appeals from the trial court's entry of summary judgment in favor of plaintiff-appellee OTARMA and from the trial court's overruling of Miami Township's cross motion in this declaratory-judgment action resolving OTARMA's duty to

defend and indemnify in a federal lawsuit arising under 42 U.S.C. 1983.[1]

{¶ 2} Miami Township contends the trial court erred in holding that OTARMA had no duty to defend or indemnify in the federal lawsuit. Miami Township also claims the trial court erred in overruling a motion to compel discovery.

{¶ 3} For the reasons set forth below, we conclude that OTARMA had no duty to defend Miami Township on eight of the nine causes of action alleged in the underlying lawsuit. However, the lawsuit included a cause of action for infliction of emotional distress that potentially or arguably fell within the scope of coverage provided by OTARMA. Therefore, OTARMA had a duty to defend until the emotional-distress claim was dismissed from the federal lawsuit in September 2020. After that point, OTARMA had no remaining duty to defend or indemnify. Finally, we see no abuse of discretion in the trial court's overruling of the motion to compel discovery. Accordingly, the trial court's judgment will be affirmed in part and reversed in part.

## I. Background

{¶ 4} OTARMA is a political-subdivision risk pool providing liability coverage to Ohio townships. In 2013, Roger Gillispie sued Miami Township in federal district court. His lawsuit included claims under 42 U.S.C. 1983 and state law. Gillispie alleged that he had been wrongfully arrested, prosecuted, and convicted in 1991 for a series of sexual assaults. He filed the lawsuit after his release from prison following a successful petition

---

[1] The defendants-appellants are Miami Township, the Miami Township Board of Trustees, and Miami Township employees or former employees Matthew Scott Moore, Tim Wilson, Marvin Scothorn, John DiPetro, and Stephen Gray (deceased). For ease of reference and except when necessary to do otherwise, we will refer to the defendants-appellants collectively in the singular as "Miami Township."

for a writ of habeas corpus. Miami Township tendered defense of the federal litigation to OTARMA, which accepted the defense under a reservation of rights.

{¶ 5} While the federal lawsuit remained pending, OTARMA filed this declaratory-judgment action in October 2017. OTARMA sought a determination that it had no duty to defend or indemnify Miami Township. In May 2022, OTARMA filed a renewed motion for summary judgment on its complaint. Following briefing, the trial court sustained OTARMA's motion and overruled a competing summary-judgment motion filed by Miami Township. In a July 2022 decision and entry, the trial court noted that the remaining claims and parties in the federal lawsuit had been narrowed substantially. At the time of the trial court's ruling, the only remaining claims were counts one through five, which alleged violations of 42 U.S.C. 1983 by former Miami Township detective Matthew Scott Moore. Count one alleged that Moore had suppressed exculpatory evidence. Count two alleged that he had participated in a suggestive eyewitness identification. Count three alleged that he had fabricated evidence. Count four alleged malicious prosecution. Count five alleged destruction of exculpatory evidence. The trial court noted that all other claims and parties had been dismissed.

{¶ 6} With regard to the five remaining claims under 42 U.S.C. 1983, the trial court reviewed the OTARMA policy and found that it was "occurrence" based, meaning that Gillispie's claims accrued when Moore's allegedly wrongful acts took place. The trial court determined that "[a]ll of the acts constituting the critical elements" of the section 1983 claims "took place prior to Gillispie's conviction in 1991," and certainly "sometime before 1994[.]" Therefore, the trial court held that OTARMA's contract with Miami Township was

not applicable, and OTARMA had no duty to defend or indemnify in the federal litigation. Shortly after the trial court's decision, it filed a separate entry and order adding Civ.R. 54(B) certification. This appeal by Miami Township followed.

## II. Analysis

{¶ 7} Under Civ.R. 56(C), summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183, 677 N.E.2d 343 (1997). Appellate review of summary judgment is de novo. *Helton v. Scioto Cty. Bd. of Commrs.*, 123 Ohio App.3d 158, 162, 703 N.E.2d 841 (4th Dist.1997). "We review the judgment independently and without deference to the trial court's decision." (Citation omitted.) *Id.*

### A. OTARMA's Duty to Defend and Indemnify

{¶ 8} In the first of two assignments of error, Miami Township contends the trial court erred in sustaining OTARMA's renewed summary-judgment motion, overruling its cross motion, and finding that OTARMA had no duty to defend or indemnify in the federal litigation. Miami Township raises three related issues. It contends the trial court erred in finding no genuine issue of material fact as to whether probable cause for Gillispie's continued incarceration dissolved while an OTARMA policy was in effect. Miami Township also claims the trial court erred in interpreting plain policy language to find no coverage. Finally, Miami Township contends the trial court erred in failing to find that repeated or

continuing misconduct "may constitute multiple and/or continuous coverage triggers."

{¶ 9} We begin our analysis with a review of the OTARMA policy language and the allegations in Gillispie's federal lawsuit. "The scope of the allegations in the complaint against the insured determines whether an insurance company has a duty to defend the insured." *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, ¶ 19. "The insurer must defend the insured in an action when the allegations state a claim that potentially or arguably falls within the liability insurance coverage." No duty to defend exists "[w]hen all the claims are clearly and indisputably outside the contracted coverage." *Id*. In other words, "the insurer need not provide a defense if there is no set of facts alleged in the complaint that, if proved true, would invoke coverage for any claim." *Granger v. Auto-Owners Ins.*, 144 Ohio St.3d 57, 2015-Ohio-3279, 40 N.E.3d 1110, ¶ 21. Given that an insurer's duty to defend is broader than its duty to indemnify, the absence of a duty to defend necessarily means there is no duty to indemnify. *AIX Specialty Ins. Co. v. Big Limo, Inc.*, 547 F.Supp.3d 757, 762 (S.D. Ohio 2021).

{¶ 10} Two OTARMA liability-coverage policies are at issue here. One is identified as the "Governmental Liability Coverage" (GLC) agreement, and the other is identified as the Legal Defense and Claim Payment Agreement ("LDCPA"). The GLC policy was in effect from July 24, 1996, to July 24, 1998. The LDCPA policy was in effect from July 24, 1998, through the filing of Gillispie's federal lawsuit.

{¶ 11} On appeal, Miami Township cites the GLC policy's "Law Enforcement Liability Coverage Part." Among other things, it provided coverage for damages resulting

from "personal injury" caused by an "occurrence" that took place during the policy period. The Law Enforcement Liability Coverage Part defined "personal injury" to include non-bodily injury arising out of, inter alia, improper detention, false arrest, malicious prosecution, and violations of rights protected by civil-rights statutes. It defined an "occurrence" as "an incident brought about by law enforcement action committed or alleged to have been committed by the 'Member' or by anyone acting under the 'Member's' direction or control."

{¶ 12} Miami Township also relies on the LDCPA policy, which similarly provided coverage for damages resulting from an "injury" caused by an "occurrence" that took place during the policy period. The LDCPA policy defined "injury" to include harm arising out of, inter alia, improper detention, false arrest, malicious prosecution, and violations of rights protected by civil-rights statutes. The LDCPA policy defined an "occurrence" as "an accident including continuous or repeated exposure to substantially the same general harmful conditions, event, happening or a commission of a wrongful act." The policy defined a "wrongful act" as "any actual or alleged error, misstatement, act of omission, neglect or breach of duty, including malfeasance, misfeasance or nonfeasance, but excluding willful misconduct, criminal conduct, fraud or malicious acts."

{¶ 13} Having identified the controlling language in the GLC and LDCPA policies, we turn now to the allegations in Roger Gillispie's amended complaint in federal court.[2] The amended complaint included detailed factual allegations about Miami Township

---

[2] The relevant allegations are found in Gillispie's first amended complaint, which was filed in the United States District Court for the Southern District of Ohio on January 17, 2014 in case number 3:13-cv-416.

employees and others engaging in conduct that resulted in Gillispie's 1991 wrongful conviction and imprisonment for raping three women. Although the majority of the factual allegations involved acts that predated Gillispie's conviction, paragraph 73 of the amended complaint alleged: "Accordingly, even after the conviction, Defendant Moore and other Defendant Officers have continued to work to keep Mr. Gillispie behind bars by repeating their lies and misrepresentations in post-conviction proceedings and through efforts to conceal their own misconduct, thereby causing Mr. Gillispie further damage."

{¶ 14} Gillispie's amended complaint contained nine substantive counts. Counts one through five set forth claims under 42 U.S.C. 1983 predicated on suppression of exculpatory material, suggestive identification, fabricated evidence, malicious prosecution, and destruction of exculpatory evidence. Count six through eight set forth state-law claims for malicious prosecution, infliction of emotional distress, and spoliation of evidence. Finally, count nine alleged that Miami Township had a statutory duty under Ohio law to indemnify its employees and former employees for any judgment entered against them personally.

{¶ 15} The federal district court significantly narrowed the issues and parties in Gillispie's lawsuit in September 2020. As a result of summary-judgment rulings, the only remaining claims were counts one through five alleging violations of 42 U.S.C. 1983 by Matthew Scott Moore. All claims against all other defendants were dismissed. Thereafter, Gillispie and Moore filed a November 17, 2022 stipulation in the federal lawsuit. They stipulated to the voluntary dismissal of counts three, four and five, which alleged violations of 42 U.S.C. 1983 predicated on fabricated evidence, malicious prosecution, and

destruction of exculpatory evidence. Following the stipulation, Gillispie's two remaining section 1983 claims against Moore (suppression of exculpatory material and suggestive identification) proceeded to a late November 2022 jury trial in federal district court. We take judicial notice that the jury returned a verdict for Gillispie on both counts.[3]

{¶ 16} As noted above, resolution of OTARMA's duty to defend in the federal-court litigation requires us to examine the allegations in Gillispie's complaint to determine whether they potentially fall within the liability coverage of either OTARMA policy. With the exception of paragraph 73 of the amended complaint quoted above, the factual allegations preceding the substantive counts of Gillispie's complaint appear to us to predate his 1991 conviction and incarceration. In addition, all but one of the substantive counts necessarily allege wrongful acts and misconduct that occurred prior to the effective date of either OTARMA policy.

{¶ 17} Count one, which pleads a section 1983 claim for "Suppression of Exculpatory Material," alleges that Moore and others "destroyed, failed to disclose, and otherwise withheld and/or suppressed exculpatory information and material from the prosecution and, thus, from Plaintiff." It alleges that "[a]s a result of these violations, Plaintiff was deprived of his right to a fair trial and was falsely convicted for a crime of which he was innocent." In other words, count one alleges that wrongful acts caused Gillispie to have an unfair trial and to be convicted unfairly. Thus, the acts necessarily

---

[3] The jury awarded Gillispie damages of $45 million against Moore personally. In response to interrogatories, the jury answered "no" when asked whether it had been proven that Moore had not acted in good faith or that he had acted outside the scope of his employment. These responses appear to be relevant to the township's potential obligation under R.C. 2744.07 to indemnify Moore for the $45 million judgment against him.

occurred before the trial and conviction.

{¶ 18} Count two, which pleads a section 1983 claim for "Suggestive Identification," alleges that Moore and others "used improper and suggestive procedures to cause Plaintiff to be misidentified as the perpetrator." It further alleges that "[t]his misconduct tainted the pretrial identifications of Mr. Gillispie, which were offered against him at trial, and the in-court identifications during his trial." Count two alleges that "[a]s a result of these violations, Plaintiff was deprived of his right to a fair trial and was falsely convicted for a crime of which he was innocent." Once again, count two alleges pretrial conduct that deprived Gillispie of a fair trial and resulted in a wrongful conviction.

{¶ 19} Count three, which pleads a section 1983 claim for "Fabricated Evidence," alleges that Moore and others "fabricated evidence, including without limitation, false police reports, fabricated statements attributed to witnesses, and their own fabricated testimony offered at both trials."[4] Count three alleges that "[a]s a result of these violations, Plaintiff was deprived of his right to a fair trial and was falsely convicted for a crime of which he was innocent." Count three makes clear that the fabrications at issue were used to secure Gillispie's conviction. Therefore, they necessarily predated the trial.

{¶ 20} Count four, which pleads a section 1983 claim for "Malicious Prosecution," alleges that Moore and others "instigated and continued the prosecution of Plaintiff without probable cause and acting out of malice." It further alleges that "[a]s a result of

---

[4] Although counts three through nine were dismissed in the federal-court proceedings, they remain relevant insofar as OTARMA may have had a duty to defend against them prior to their dismissal. Given the dismissal of counts three through nine, the only counts relevant to OTARMA's duty to indemnify are counts one and two, on which the jury returned its $45 million verdict against Moore.

the malicious prosecution, Plaintiff was falsely convicted for a crime of which he was innocent." Once again, if the "malicious prosecution" resulted in a false conviction it necessarily had to occur before the conviction.

{¶ 21} Count five, which pleads a section 1983 claim for "Destruction of Exculpatory Evidence," alleges that Moore and others "suppressed, destroyed, or caused to be destroyed exculpatory and materially-favorable evidence, including but not limited to police reports, audio recordings, alibi evidence, and crime-scene evidence containing genetic material." Count five also alleges that certain crime-lab employees "destroyed exculpatory evidence and materially-favorable evidence, including but not limited to crime scene evidence containing genetic material." It further alleges that "[a]s a result of these violations, Plaintiff was deprived of his right to a fair trial and was falsely convicted for a crime of which he was innocent." Once again, the wrongful acts necessarily predated trial if they resulted in an unfair trial and a false conviction.

{¶ 22} Count six, which pleads a state-law claim for "Malicious Prosecution," alleges that Moore and others "instigated and continued the prosecution of Plaintiff without probable cause and acting out of malice." It alleges that "[a]s a result of the malicious prosecution, Plaintiff was falsely convicted for a crime of which he was innocent." As noted above, if the "malicious prosecution" resulted in a false conviction it necessarily had to precede the conviction.

{¶ 23} Count seven, which pleads a state-law claim for "Infliction of Emotional Distress," alleges that Moore and others "intentionally and/or recklessly engaged in extreme and outrageous conduct that caused Plaintiff severe emotional distress and also

bodily harm from his distress." It further alleges that "Plaintiff suffered actual damages, pain and suffering, lost wages, and other damages as a direct and proximate result." Unlike the prior counts, which allege that specified misconduct occurred and that it resulted in an unfair trial and a wrongful conviction, count seven does not identify the distress-causing acts or make clear when they occurred. That being so, count seven may be read as alleging acts of post-conviction infliction of emotional distress that occurred during one of the OTARMA policy periods.

{¶ 24} Count eight, which pleads a state-law claim for "Spoliation of Evidence," alleges that Moore and others "willfully destroyed evidence in a manner that disrupted Plaintiff's criminal proceedings, knowing that there was pending or probable litigation that would involve this evidence." It further alleges that "[a]s a result of the absence of this evidence, Plaintiff was falsely convicted for a crime of which he was innocent." If the absence of the evidence resulted in the false conviction, the act of destroying the evidence necessarily must have occurred before the conviction.

{¶ 25} Finally, count nine pleads a state-law claim for indemnification. It raises an issue of law regarding a potential statutory obligation of Miami Township to indemnify its current or former employees for any judgment rendered against them personally.[5] But any statutory duty to indemnify that Miami Township may owe to its employees or former employees is distinct from OTARMA's contractual duty to defend and indemnify Miami Township in Gillispie's federal litigation. Moreover, the Ohio Supreme Court has made

---

[5] Count nine of Gillispie's amended complaint cites R.C. 1729.031. In its September 21, 2020 summary-judgment ruling, the federal district court noted Gillispie's concession that this citation is a typographical error and that the indemnification statute is R.C. 2744.07.

clear that the statutory right to indemnification is a personal right held by the employee, not a judgment creditor. For that reason, a judgment creditor such as Gillispie may not assert an employee's indemnification right in an action directly against a political subdivision. *Ayers v. Cleveland*, 160 Ohio St.3d 288, 2020-Ohio-1047, 156 N.E.3d 848. Finally, count nine, which addresses indemnification rights between Miami Township and the individual defendants, does not itself allege any wrongful act that resulted in an injury. Therefore, count nine of Gillispie's amended complaint does not come within the scope of either OTARMA policy.

{¶ 26} Having examined the causes of action in Gillispie's amended complaint, we conclude that count seven, which states a claim for infliction of emotional distress, potentially or arguably alleges wrongful acts that occurred during one of the OTARMA policy periods. Therefore, with respect to count seven, OTARMA had a duty to defend Miami Township until September 2020, when count seven was dismissed in connection with the federal district court's summary-judgment rulings. *See Ward v. United Foundries, Inc.*, 129 Ohio St.3d 292, 2011-Ohio-3176, 951 N.E.2d 770, ¶ 19 ("If the allegations state a claim that potentially or arguably falls within the liability insurance coverage, then the insurer must defend the insured in the action.").

{¶ 27} As for all other claims in Gillispie's federal lawsuit, they necessarily allege wrongful acts that occurred prior to or at the time of his trial and conviction, which was before the effective date of the OTARMA policies. As noted above, both OTARMA policies only provide coverage for damages resulting from an injury caused by an act, or "occurrence," that takes place during the policy period. Given that the wrongful acts

mentioned in every other count of Gillispie's federal lawsuit were alleged to have occurred before the effective dates of the OTARMA policies, we conclude that OTARMA had no duty to defend or indemnify.

{¶ 28} In reaching our conclusion, we again acknowledge the existence of paragraph 73 of Gillispie's amended complaint. Paragraph 73 does allege that Moore and others "continued to work to keep Mr. Gillispie behind bars by repeating their lies and misrepresentations in post-conviction proceedings and through efforts to conceal their own misconduct." Although this language—along with the rest of the complaint's factual background—was incorporated by reference into each cause of action that followed, it does not correspond to the specific allegations supporting any of Gillispie's substantive claims. Other than count seven, the substantive causes of action allege that certain wrongful acts occurred and that they resulted in Gillispie's receiving an unfair trial and being wrongfully convicted. They do not allege or depend on any post-conviction misconduct by any of the defendants. Therefore, we are unpersuaded by Miami Township's reliance on paragraph 73 to bring Gillispie's actual claims within the scope of OTARMA's policies.

{¶ 29} We have reached our conclusion solely by examining the OTARMA policies and the allegations in Gillispie's complaint. We note, however, that the federal district court's jury instructions on the two surviving section 1983 claims shed additional light on the acts underpinning them. Addressing the two claims together, Instruction 20 advised the jury:

> * * * Plaintiff Gillispie claims that Defendant Moore *violated his right*

*to a fair trial* in one or more of the following ways:

>First, that Defendant Moore *violated his right to a fair trial through unreliable identifications that were used as evidence against him in the criminal case*; and

>Second, that Defendant Moore *violated his right to a fair trial by suppressing material evidence.*

(Emphasis added.)

{¶ 30} With regard to the elements of the section 1983 claim predicated on suppressing evidence, the district court then instructed the jury that Gillispie was required to prove:

>1. *Moore knowingly or recklessly concealed from the prosecutor readily apparent exculpatory and/or impeachment evidence during the criminal case and/or during Gillispie's appeal.*

>2. The evidence was material; and

>3. Gillispie was injured as a result.

(Emphasis added.)

{¶ 31} With regard to the section 1983 claim predicated on a suggestive identification, the district court instructed the jury that Gillispie was required to prove:

>1. *Moore knowingly or recklessly used unnecessarily suggestive identification procedures that resulted in one or more unreliable identifications*;

>2. *Evidence of the one or more unreliable identifications was offered into evidence in the criminal case*; and

3. Gillispie was injured as a result.

(Emphasis added.)

**{¶ 32}** The foregoing claims are the only two on which indemnification remains an issue, and the district court's jury instructions are consistent with our determination that OTARMA has no duty to indemnify Miami Township. Like Gillispie's amended complaint in federal court, the jury instructions also demonstrate that his section 1983 claims are predicated on wrongful acts that predate the OTARMA policies.[6]

**{¶ 33}** Relying primarily on paragraph 73 of Gillispie's amended complaint, Miami

---

[6] If we assume, arguendo, that Gillispie's section 1983 claims also allege post-conviction suppression of evidence and related misconduct during the OTARMA policy periods, a potential issue arises as to whether a post-conviction constitutional right to exculpatory evidence even exists. Gillispie's section 1983 claims are predicated largely on violations of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In *District Attorney's Office for the Third Judicial District v. Osborne*, 557 U.S. 52, 129 S.Ct. 2308, 174 L.Ed.2d 38 (2009), the United States Supreme Court recognized that *Brady* involves a defendant's due-process right to the disclosure of material exculpatory evidence before trial. *Id.* at 68. *Osborne* characterized *Brady* as "the wrong framework" for assessing disclosure obligations after a defendant is convicted and a case is closed. *Id.* at 68-69; *see also Haughey v. County of Putnam*, No. 18-CV-2861, 2020 WL 1503513, at *10 (S.D.N.Y. Mar. 29, 2020) (recognizing that "several courts—and possibly the Supreme Court—have held that there is no post-conviction constitutional right to exculpatory evidence"); *Gavitt v. Born*, 835 F.3d 623, 647-648 (6th Cir.2016) (relying on *Osborne* to uphold the dismissal of a wrongfully-convicted plaintiff's section 1983 claim predicated on law enforcement withholding exculpatory evidence "at the time of his trial" and also "throughout the period of his imprisonment, in violation of his due process rights"). We recognize that *Osborne* is distinguishable in some ways from the present case. Perhaps most significantly, *Osborne* involved evidence discovered after trial, whereas Miami Township contends Gillispie's lawsuit involves evidence known before trial that continued to be suppressed after his conviction. Whether this distinction makes a difference is subject to dispute. In the portion of *Gavitt* cited above, the federal Sixth Circuit Court of Appeals appears to have found that it does not. In any event, we need not resolve what have been characterized as "thorny questions about the existence and scope of a constitutional right to post-conviction disclosure of exculpatory evidence." *Haughey* at *10. We do not read the section 1983 claims in Gillispie's lawsuit as relying on any post-conviction non-disclosure of exculpatory evidence.

Township does suggest that he alleges the commission of additional wrongful acts committed during the OTARMA policy periods by continuing to suppress exculpatory evidence, engaging in lies, and concealing prior misconduct. In our view, however, any post-conviction ongoing suppression of evidence or related wrongdoing that may be gleaned from the complaint was merely a continuation of alleged *Brady* violations committed earlier. Although an ethical obligation to disclose exculpatory evidence may continue after trial, the continuing obligation stems from an earlier completed act of non-disclosure. Here Gillispie's federal-court complaint makes clear that any act of failing to disclose exculpatory evidence occurred prior to the effective date of the OTARMA policies. We reject the notion that continued suppression of evidence during post-conviction proceedings constituted one or more new acts that occurred within the OTARMA policy periods.[7] *Travelers Indemnity Ins. Co. v. Mitchell*, 925 F.3d 236, 245, fn. 4 (5th Cir.2019) ("The estates do allege that Forrest County officials committed additional wrongful acts during Travelers' and Scottsdale's policy periods by failing to come forward with exculpatory evidence or admit their civil rights violations. But other courts have rejected this argument, holding that failure to admit past unconstitutional acts does not retrigger an act-based policy.").[8]

---

[7] It is worth noting too that Miami Township's argument about multiple or continuous acts or "triggers" occurring post-conviction during the OTARMA policy periods is largely academic in light of our determination above that Gillispie's section 1983 claims do not allege or depend on any post-conviction wrongdoing by Moore or others.

[8] Miami Township itself cites *Travelers Indemnity* for the proposition that insurance coverage need not "be triggered by a single moment of wrongful conduct[.]" *Travelers Indemnity* at 246. But that statement was true in *Travelers Indemnity* because the policies at issue were injury-based policies, not act-based policies. Coverage existed for injuries occurring during the applicable policy periods regardless of when the wrongful causal act

**{¶ 34}** "In wrongful conviction cases, the wrongful act is the one that causes the wrongful conviction; thus, act-based policies are usually triggered on or around the time of conviction." *Id.* at 245. We note too that "Ohio, like the majority of states, applies the 'cause test' when determining the number of occurrences under an insurance policy." *Big Lots Stores, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 240 F. Supp.3d 725, 732 (S.D. Ohio 2017), citing *Parker Hannifin Corp. v. Steadfast Ins. Co.*, 445 F.Supp.2d 827 (N.D. Ohio 2006). "Under the cause test, the court considers 'if there was but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damages.' " (Citation omitted.) *Id.* If so, "then there is a single occurrence under an insurance contract." *Id.*; *see also Indian Harbor Ins. Co. v. City of Waukegan*, 392 Ill. Dec. 812, 33 N.E.3d 613, ¶ 44 (Ill. App. 2015) ("Applying the cause theory * * * to the present case clearly establishes that this case presented a single cause and therefore a single occurrence. The alleged *Brady* violations that contributed to Rivera's arrest and convictions might have had an ongoing effect over a period of time, but Rivera's injury resulted from the 'same conditions and was inflicted as part of an unbroken and uninterrupted continuum.' ")[9] Here the section 1983 claims in Gillispie's amended

---

occurred. *Id.* at 241. *Travelers Indemnity* does not help Miami Township because OTARMA's policies are "occurrence" policies with act-based triggers, not injury-based triggers. For the same reason, we are unpersuaded by Miami Township's citation to *Ferguson v. St. Paul Fire & Marine Ins. Co.* 597 S.W.3d 249 (Mo. App. 2019), and *St. Paul Guardian Ins. Co. v. City of Newport*, 804 Fed. Appx. 379 (6th Cir. 2020), which as Miami Township acknowledges both involved injury-based policies providing coverage if an injury occurred during the policy period.

[9] In *Ferguson*, 597 S.W.3d 249, 258, a Missouri court of appeals criticized *Indian Harbor* for applying "act-based" or "occurrence-based" principles to an "injury-based" policy. That criticism does not apply here because OTARMA's policies are "act-based" or "occurrence-based."

complaint allege the commission of wrongful acts that predate the OTARMA policies. Those completed acts were the single cause of Gillispie's "injury" of wrongful conviction and his lengthy imprisonment.

{¶ 35} On appeal, Miami Township discusses whether we should apply (1) the "arrest-conviction rule," which it describes as providing "that coverage is triggered only under a policy in effect on the date of the arrest and/or conviction"; (2) the "exoneration rule," which it characterizes as providing "that coverage is triggered only under the policy in effect on the date of exoneration"; or (3) the "continuous trigger rule" or "multiple trigger rule," which it describes as providing "that coverage is triggered under all applicable policies in effect between arrest through exoneration." *See* Appellants' Merit Brief at 17. Miami Township asserts that the "arrest-conviction rule" represents the majority view but that the proper approach remains an open question in Ohio.

{¶ 36} For purposes of our analysis herein, we need not "adopt" any of the foregoing rules. In evaluating OTARMA's duty to defendant and indemnify, we simply have applied the pertinent policy language to the allegations in Gillispie's complaint. As explained above, both OTARMA policies provide coverage for damages resulting from an injury caused by an act, or "occurrence," that takes place during the policy period. Therefore, the applicable "rule" in the present case is this: coverage is triggered only if a wrongful act occurs during the policy period and causes an injury. With the exception of count seven, the injury-causing acts alleged in Gillispie's complaint necessarily did not occur during either OTARMA policy period.

{¶ 37} Miami Township also stresses the absence of a "deemer" clause in the

OTARMA policies. It contends such a clause explicitly would deem all injuries arising out of continuous or repeated exposure to the same or substantially the same general conditions to be "one occurrence." *See* Appellants' Merit Brief at 15. In response, we note that the LDCPA policy comes close to containing such a clause insofar as it defines an "occurrence" as "an accident including continuous or repeated exposure to substantially the same general harmful conditions, event, happening or a commission of a wrongful act." Regardless, the presence of a so-called "deemer" clause might make resolution of a coverage dispute easier, but we do not view the absence of such a clause as dispositive.

{¶ 38} Finally, we turn to Miami Township's argument that probable cause for Gillispie's continued incarceration dissolved while the OTARMA polices were in effect. *See* Appellants' Merit Brief at 10-12. This argument appears to relate to Gillispie's malicious-prosecution claims under section 1983 and/or state law. Miami Township suggests that probable cause may have disappeared while an OTARMA policy was in effect and that the disappearance of probable cause would result in the accrual of a malicious-prosecution claim.

{¶ 39} We find Miami Township's argument unpersuasive for at least two reasons. First, with regard to OTARMA's duty to defend, counts four and six of Gillispie's complaint set forth factually identical malicious-prosecution claims under 42 U.S.C. 1983 and state law. As noted above, they alleged that Moore and others "instigated and continued the prosecution of Plaintiff without probable cause and acting out of malice." They further alleged that "[a]s a result of the malicious prosecution, Plaintiff was falsely convicted for a crime of which he was innocent."

{¶ 40} For present purposes, we find it notable that the malicious-prosecution claims alleged *instigation* of the prosecution without probable cause. This allegation is indicative of a claim by Gillispie that probable cause never existed, not that it initially existed and later evaporated. In addition, if the malicious prosecution resulted in a false conviction, it necessarily had to occur before the conviction. Therefore, as plead in Gillispie's complaint, the malicious-prosecution claims did not involve acts occurring during the OTARMA policy periods. Second, with regard to OTARMA's duty to indemnify, the state-law malicious-prosecution claim was dismissed in conjunction with the federal district court's September 2020 summary-judgment rulings. Gillispie later voluntarily dismissed his section 1983 malicious-prosecution claim before trial. Therefore, OTARMA cannot have a duty to indemnify on either claim.

{¶ 41} Based on the reasoning set forth above, we find that OTARMA had a duty to defend Miami Township on count seven of Gillispie's amended complaint in federal district court. That duty to defend continued until September 2020, when count seven was dismissed. OTARMA had no duty to defend or indemnify Miami Township with respect to any other causes of action in Gillispie's federal lawsuit.

{¶ 42} Miami Township's first assignment of error is sustained insofar as the trial court erred in entering summary judgment for OTARMA regarding its duty to defend on count seven. Given the absence of any factual dispute, the trial court should have entered summary judgment in favor of Miami Township on its cross motion with respect to OTARMA's duty to defend on count seven until September 2020. In all other respects, Miami Township's first assignment of error is overruled.

## B. Motion to Compel Discovery

{¶ 43} In its second assignment of error, Miami Township contends the trial court abused its discretion in overruling a November 21, 2018 motion to compel discovery. In its motion, Miami Township sought to compel OTARMA to respond to and comply with interrogatories and requests for document production. Miami Township maintained that it was entitled to know who made the no-coverage decision, why it was made, and whether the applicable process was followed. The trial court overruled the motion on January 28, 2019. The trial court later denied reconsideration, reasoning that the requested discovery was unnecessary, unduly burdensome, and unlikely to lead to the discovery of relevant, admissible evidence.

{¶ 44} Upon review, we see no abuse of discretion in the trial court's discovery ruling. By Miami Township's own admission, the discovery dispute concerned OTARMA's claims-handling and decision-making process and its decision to seek declaratory judgment regarding its duty to defend and indemnify. In its reply brief, Miami Township also asserts that the requested discovery was relevant to a potential bad-faith claim.

{¶ 45} In our analysis herein, however, we have reviewed the terms of OTARMA's policies and the allegations of Gillispie's complaint and fully resolved the issues raised in this declaratory-judgment action. The facts are not in dispute, and there is no disagreement as to the underlying coverage documents. We are unpersuaded that discovery regarding OTARMA's claims-handling or decision-making was necessary. Moreover, in light of our present ruling, Miami Township has no potential bad-faith claim. OTARMA provided a defense in the federal-court litigation, and OTARMA has no duty to

indemnify. Accordingly, Miami Township's second assignment of error is overruled.

### III. Conclusion

{¶ 46} The trial court's entry of summary judgment in this declaratory-judgment action is reversed insofar as it declared that OTARMA had no duty to defend Miami Township on count seven of Gillispie's amended complaint. The trial court erred in entering summary judgment in favor of OTARMA on that issue. The trial court should have sustained Miami Township's cross motion for summary judgment to the extent that OTARMA did have a duty to defend on count seven until it was dismissed in September 2020.[10] The trial court's entry of summary judgment in favor of OTARMA is affirmed in all other respects. As a matter of law, OTARMA had no duty to defend or indemnify Miami Township on any other cause of action. Finally, the trial court did not abuse its discretion in overruling Miami Township's motion to compel discovery.

. . . . . . . . . . . . .

EPLEY, J. and LEWIS, J., concur.

---

[10] Although the denial of summary judgment ordinarily is not appealable, an exception exists in declaratory-judgment actions where there are no genuine issues of material fact and a trial court fully sets forth the rights and responsibilities of the parties. In such a case, a denial of summary judgment may be appealable. *See, e.g.*, *Algren v. Algren*, 183 Ohio App.3d 114, 2009-Ohio-3009, 916 N.E.2d 491, ¶ 34, fn. 4 (2d Dist.), citing *Hoop v. Nationwide Mut. Fire Ins. Co.*, 2d Dist. Montgomery No. 19686, 2003-Ohio-3772, ¶ 2, fn. 1. We find that to be the case here. We note too that Miami Township did appeal from both the trial court's entry of summary judgment in favor of OTARMA and from its overruling of Miami Township's cross motion.